# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3373

_____

| | |
|---|---|
| Jane Doe, et al., | * |
| | * |
| Plaintiffs - Appellees, | * |
| | * |
| v. | * |
| | * Appeal from the United States |
| South Iron R-1 School District, et al., | * District Court for the |
| | * Eastern District of Missouri. |
| Defendants - Appellants. | * |
| ----------------------------------------------- | * |
| Americans United For Separation of | * |
| Church and State, | * |
| | * |
| Amicus on Behalf of Appellees. | * |

_____

Submitted: April 12, 2007
Filed: August 21, 2007

_____

Before LOKEN, Chief Judge, BYE and RILEY, Circuit Judges.

_____

LOKEN, Chief Judge.

In this First Amendment Establishment Clause case, the South Iron R-1 School District, the members of its Board of Education, and certain school officials (collectively, the District) appeal the district court's[1] grant of a preliminary injunction

_____

[1] The HONORABLE CATHERINE D. PERRY, United States District Judge for the Eastern District of Missouri.

barring the District from "allowing distribution of Bibles to elementary school children on school property at any time during the school day." Though our appellate jurisdiction is normally limited to reviewing final orders, we may review interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C. § 1292(a)(1). On appeal, the parties urge us to take up issues going to the merits of the dispute that go far beyond the preliminary injunction under review. We decline to do so. We review the grant of a preliminary injunction for abuse of discretion, giving "deference to the discretion of the District Court." Purcell v. Gonzalez, 127 S. Ct. 5, 7 (2006); see McCreary County v. ACLU, 545 U.S. 844, 867 (2005); Heartland Acad. Cmty. Church v. Waddle, 335 F.3d 684, 690 (8th Cir. 2003). We conclude that the district court did not abuse its discretion in granting the preliminary injunction. Accordingly, we affirm.

## I. Background

The preliminary injunction was issued after an expedited briefing and hearing schedule. The agreed record consists of plaintiffs' verified complaint, the minutes of various school board meetings, and the District's written policy entitled "Distribution of Materials and Literature to Students" which it adopted ten days before the preliminary injunction hearing. The full text of that policy is reproduced in Appendix A to this opinion.

In early 2005, District Superintendent M. Homer Lewis decided to discontinue the District's practice of allowing representatives of Gideons International to distribute Bibles to fifth grade students of the South Iron Elementary School in their classrooms during instructional time. Members of the Ministerial Alliance asked the Board of Education to reconsider this decision. At the Board's February 2005 meeting, Superintendent Lewis told the Board members that "four legal sources" including the school's attorney advised that the practice be discontinued. Lewis stated that if the Board wanted to allow the distribution of Bibles at school, an "open forum" policy

could be adopted.  The Board voted 4-3 "to pretend this meeting never happened, and to continue to allow the Gideons to distribute Bibles as we have done in the past." However, when the ACLU wrote protesting this decision, the Board voted at its March meeting "to delay the Gideons distribution of Bibles" until the school attorney "gives us his determinations."

At the September Board meeting, a representative of the Gideons and two local ministers asked whether the Board would allow the distribution of Gideons Bibles. Superintendent Lewis read letters from the school attorney, the District's insurer, and the ACLU warning that the practice was illegal and could jeopardize the District's insurance coverage.  A minister asked whether the Gideons could give Bibles to the children for them to distribute.  The Gideons representative advised that Gideons Bibles could not be distributed unless members of the Gideons were present.  The Board then voted 4-3 "to allow the Gideons to come in and distribute Bibles to the 5th graders."  The school attorney wrote the Board urging it to reconsider this decision. Superintendent Lewis resigned later that month, citing this issue.  The Board nonetheless declined to reconsider the issue at its October 3, 2005, meeting.  On the afternoon of October 4, a school day, two representatives of the Gideons came to the elementary school and distributed Gideons Bibles to fifth graders.  The school principal accompanied the Gideons to the two fifth grade classrooms and observed the distribution.

Plaintiffs, parents of children who attended or will attend fifth grade in the District, filed this suit in February 2006 alleging a violation of the Establishment Clause and seeking declaratory and injunctive relief preventing the District "from further endorsement of religion."  At the March 2006 Board meeting, the Board's President announced, "there was not one board member who is opposed to Bibles being placed in the school."  At the April 2006 meeting, the Board defeated, by a 3-3-1 vote, a motion "to rescind the motion allowing the Gideons to distribute Bibles and adopt a new policy to allow the students to distribute the Bibles."  At the May

meeting, the attorney for the District's insurer advised the Board that the insurer would not defend the lawsuit because allowing the Gideons to distribute Bibles "during instructional time" is an intentional violation of the Establishment Clause and the Missouri Constitution.

On June 28, 2006, with all defendants in default in the lawsuit, plaintiffs moved for an expedited hearing and a preliminary injunction. The next day, present counsel for the District moved for leave to appear *pro hac vice*. The district court granted the motion, scheduled a preliminary injunction hearing for July 27, and warned that the hearing "may be converted into a hearing for a default judgment and permanent injunction." On July 11 and 12, the District filed motions to dismiss and to continue the preliminary injunction hearing, and plaintiffs filed a motion for default judgment. The district court continued the hearing to August 17. Two days before that hearing, the District submitted a reply brief arguing that the preliminary injunction should be denied because the District had adopted the written policy on August 7, which obviated the need for injunctive relief.

Following the hearing, the district court denied the District's motion to dismiss and plaintiffs' motion for a default judgment and granted the requested preliminary injunction in a lengthy and thorough Memorandum and Order. Doe v. South Iron R-1 Sch. Dist., 453 F. Supp.2d 1093 (E.D. Mo, 2006). The injunction does not address the District's new policy or prescribe how the District may distribute other "Materials and Literature" to students. Rather, the injunction provides:

> Defendants and any persons acting in concert with them are enjoined from distributing or allowing distribution of Bibles to elementary school children on school property at any time during the school day. This injunction shall remain in effect until trial on the merits of the case, or until otherwise ordered by the Court.

-4-

In granting the injunction, the district court properly applied the familiar four-factor test in Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  The court concluded: (1) plaintiffs have shown a substantial likelihood of success on the merits of their claim that the past practice of allowing Gideons representatives to distribute Gideons Bibles to fifth grade students in the classroom, during the school day and with the visible support of school officials, violates the Establishment Clause as construed in Berger v. Rensselaer Cent. Sch. Corp., 982 F.2d 1160 (7th Cir. 1993), and other cases; (2) the new policy does not moot the need for injunctive relief because District officials have stated their intention to allow distribution of Bibles to elementary school children during the school day, a practice no Establishment Clause case has upheld, and the policy does not include safeguards guaranteeing government neutrality that were present in cases such as Peck v. Upshur County Bd. of Educ., 155 F.3d 274, 277, 282, (4th Cir. 1998), on which the District relied; (3) the District's stated intention to distribute Bibles to all elementary children threatens irreparable harm; (4) the District will not be harmed by a limited preliminary injunction; and (5) the public interest supports an injunction to prevent Establishment Clause violations.

## II.  Discussion

**A. The Injunction Against Past Practices.**  As the District's new policy was adopted ten days before the preliminary injunction hearing and had never been applied, the district court quite properly focused primarily on the District's prior practice of allowing the Gideons to distribute Gideons Bibles to fifth graders in classrooms during the school day.  The court concluded, after a thorough analysis of prior case law, that the practice very likely violated the Establishment Clause.  It issued a preliminary injunction *limited to prohibiting that practice* pending trial on the merits.  On appeal, the District raises only a single argument challenging this aspect of the district court's decision.  The District argues that, because the injunction compels it to forbid the distribution of Bibles, the injunction "mandates a content-

based restriction on speech and is thus invalid." This contention is without merit. As the Seventh Circuit said in rejecting a similar argument in <u>Berger</u>, 982 F.2d at 1165, "it distorts the facts and misconstrues the law."

When government maintains a traditional public forum or creates a limited public forum for debate and expressive activity, any content-based censorship must survive strict judicial scrutiny. <u>See</u> <u>Perry Educ. Ass'n v. Perry Local Educators' Ass'n</u>, 460 U.S. 37, 45-46 (1983). Thus, when a public school or other government agency creates a forum generally open to students or to the public but denies access to those who would engage in protected religious speech, it must "satisfy the standard of review appropriate to content-based exclusions" by showing that the exclusion "is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." <u>Widmar v. Vincent</u>, 454 U.S. 263, 270 (1981). In these circumstances, the interest in avoiding an Establishment Clause violation is no defense to violating the Free Exercise Clause rights of religious speakers. <u>See</u> <u>Good News Club v. Milford</u>, 533 U.S. 98, 113 (2001); <u>Rosenberger v. Rector & Visitors of Univ. of Va.</u>, 515 U.S. 819, 829-30 (1995); <u>Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.</u>, 508 U.S. 384, 395-96 (1993); <u>Board of Educ. of Westside Cmty. Sch. v. Mergens</u>, 496 U.S. 226 (1990). But this appeal raises an entirely different issue.

When a public facility such as a school is not a public forum, by tradition or by design, "the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." <u>Perry</u>, 460 U.S. at 46. Thus, when Supreme Court Justices have debated whether a particular school or other government activity should be enjoined as violating the Establishment Clause, the debates centered on whether the activity constituted impermissible government religious expression, endorsement, or coercion, not on whether the injunction was "content-based." <u>See</u> <u>Van Orden v. Perry</u>, 545 U.S. 677, 703-04 (2005) (Breyer, J., concurring); <u>Santa Fe Indep. Sch. Dist. v. Doe</u>, 530 U.S.

290 (2000); Capitol Square Review & Adv. Bd. v. Pinette, 515 U.S. 753, 763-65, 774-76 (O'Connor, J., concurring), 787 (Souter, J., concurring) (1995); County of Allegheny v. ACLU, 492 U.S. 573, 600-01, 668-69 (Kennedy, J., concurring in part and dissenting in part) (1989). The Court's Establishment Clause decisions prohibiting, for example, school prayer or posting the Ten Commandments in public schools are inherently based upon content-based distinctions; "apart from its content, a prayer is indistinguishable from a biology lesson." Widmar, 454 U.S. at 285 (White, J., dissenting); see Rosenberger, 515 U.S. at 833 ("when the State is the speaker, it may make content-based choices"); Santa Fe, 530 U.S. at 325 ("Our Establishment Clause jurisprudence simply does not mandate 'content neutrality'.") (Rehnquist, J., dissenting).

Thus, we reject the contention that the preliminary injunction is invalid because it is content-based. The District does not otherwise challenge the district court's conclusion that plaintiffs made a sufficient factual showing as to likelihood of success, irreparable injury, and the other Dataphase factors to warrant preliminarily enjoining the District's *prior* practice. We agree with that conclusion for the reasons stated in the section of the district court's opinion entitled **The Board's Past Actions**. Doe, 453 F. Supp.2d at 1096-1100. In particular, we agree with the district court and the Seventh Circuit in Berger that distributing Bibles to fifth graders in the classroom raises far graver Establishment Clause concerns than, for example, permitting outside groups to distribute religious flyers on school premises or inviting ministers to give nonsectarian prayers at graduation ceremonies. 982 F.2d at 1170.

**B. The New Policy.** The District devotes most of its appeal briefs to arguing the constitutional validity of its new policy. The District argues that the policy is "constitutional on its face" because it "treats religious speech in a limited public forum on equal terms and conditions with other speech," and that the district court erred in enjoining the policy on the grounds that it does not require advance notice to those who might object to Bible distribution, does not provide safeguards to prevent the

distribution of Bibles by school officials, and was passed for the purpose of promoting Christianity. These issues are not properly before us, and we decline to consider them. The district court did not enjoin the new policy. It entered the same injunction against the District's past practices that it would have entered one month earlier, before the new policy was adopted. The injunction prohibits some methods of Bible distribution that the new policy arguably would allow, but that is a far cry from declaring the new policy unconstitutional or enjoining the District from taking any action to implement the policy.

The district court noted that the District's "last-minute change in policy, coupled with the lack of any significant factual record, confuses the issues." The court then carefully considered "whether the new policy moots the need for an injunction." The court concluded that the need for injunctive relief was not moot because it is "highly likely" that the Gideons or the Ministerial Alliance will request permission to distribute Bibles to elementary children during the school day, and the Board members have stated their intention to grant that request with or without the new policy. We agree with this conclusion. Indeed, on appeal the District does not challenge this aspect of the district court's analysis.

The other issue which frequently requires careful appellate review is whether a preliminary injunction is overly broad or vague. See Fed. R. Civ. P. 65(d); E.W. Bliss Co. v. Struthers-Dunn, Inc., 408 F.2d 1108, 1113-17 (8th Cir. 1969). Here, the District does not challenge any provision of the injunction on these grounds. The injunction is succinct, clearly written, and limited to the precise conduct that warranted preliminary equitable relief. It does not, for example, broadly enjoin the distribution of all religious-oriented materials or address what activities the District might allow after school hours under the new policy. For these reasons, both the court's decision to grant a preliminary injunction and the form of injunction granted must be affirmed.

There is dicta in the district court's lengthy opinion addressing whether the new policy is likely to survive Establishment Clause review on the merits. But our limited jurisdiction to review an interlocutory order granting a preliminary injunction does not extend to rendering advisory opinions on the merits of issues that may need to be decided later in the litigation. The district court's expedited preliminary injunction ruling was made on an abbreviated record, due primarily to the District's initial default and untimely response to the preliminary injunction issues. The court will have time enough to consider and rule on these broader issues when a full trial record has been developed. We will then have jurisdiction to review its final order.

We affirm the preliminary injunction granted in the district court's order dated September 5, 2006. We deny the District's motion to supplement the record.

## APPENDIX A

### DISTRIBUTION OF MATERIALS AND LITERATURE TO STUDENTS

A.      Any group, organization, corporation, individual, club or association that wishes to distribute any printed material may do so subject to the following conditions:

   1.      All proposed printed materials must be submitted to the Superintendent or designee 48 hours prior to the requested time of distribution.

   2.      If the Superintendent does not respond to the request within 48 hours of receipt of the request, the request is deemed approved and material may be distributed.

   3.      The Superintendent or designee shall state in writing the reason(s) under Section B of this Policy for denying a request to distribute printed materials to students.

   4.      If a request is approved, the literature may be distributed to students either directly in front of the administrative offices of the District or at a table provided by the District in the Northwest corner of the cafeteria. Literature shall not be distributed from any other location.

   5.      If a request is approved, literature may be distributed either before or after the school day, before or after classes or during lunch time.

6. No student may in any way be compelled or coerced to accept any materials being distributed by any person distributing such materials or by any school official.

B. All requests to distribute literature shall be approved unless the material:

1. Is libelous, invades the privacy of others, infringes on a copyright or is in any way prohibited by state or federal law.

2. Is obscene, pornographic or lewd, vulgar or indecent.

3. Primarily seeks to advertise for sale, the products or services of outside businesses.

4. Endorses a particular candidate for public office, other than a candidate for student elective office.

5. Promotes alcohol, tobacco, drugs or other illegal activity.

6. Is likely to cause substantial disruption to or materially interfere with the proper and orderly operation of the school and its activities.

C. This policy does not apply to students who may wish to distribute printed materials to fellow students.

D. All appeals must be submitted in writing to the Board of Education. The Board shall hold a hearing regarding the matter on the next regularly scheduled Board Meeting. The Board shall issue a decision in writing within five working days following the hearing.

_____