# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1847

_____

| | | |
|---|---|---|
| Lonney Roark, et al., | * | |
| | * | |
| Plaintiffs - Appellees, | * | |
| | * | |
| v. | * | |
| | * | |
| South Iron R-1 School District, et al., | * | |
| | * | |
| Defendants - Appellants, | * | Appeal from the United States |
| ----------------------------------------------- | * | District Court for the |
| Foundation for Moral Law, | * | Eastern District of Missouri |
| | * | |
| Amicus on Behalf of Appellants, | * | |
| | * | |
| American Jewish Congress; Americans | * | |
| United for Separation of Church and | * | |
| State, | * | |
| | * | |
| Amici on Behalf of Appellees. | * | |

_____

Submitted: December 11, 2008
Filed: July 16, 2009

_____

Before LOKEN, Chief Judge, BEAM, Circuit Judge, and KYLE,* District Judge.

_____

*The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

LOKEN, Chief Judge.

For some thirty years, school officials at South Iron Elementary School in Iron County, Missouri, permitted representatives of Gideons International to distribute Bibles to fifth grade students in the classroom, during the school day, in the presence of a teacher or school administrator. In February 2006, parents of several elementary school students commenced this action against the School District, members of the Board of Education, and school officials (referred to collectively as "the District"), alleging that this practice violated the Establishment Clause of the First Amendment. Ten days before a hearing on plaintiffs' motion for a preliminary injunction, the Board passed a new policy on literature distribution prepared by counsel recently retained to represent the District in the lawsuit.

The district court granted a preliminary injunction enjoining the District from "allowing distribution of Bibles to elementary school children on school property at any time during the school day." Doe v. S. Iron R-1 Sch. Dist., 453 F. Supp. 2d 1093, 1104 (E.D. Mo. 2006). We affirmed the preliminary injunction, declining to address the constitutionality of the new policy. Doe v. S. Iron R-1 Sch. Dist., 498 F.3d 878, 882-84 (8th Cir. 2007). The case returned to the district court, where plaintiffs amended their complaint to allege that the new policy violates the Establishment Clause because it allows distribution of Bibles to elementary school students during the school day. The district court granted plaintiffs summary judgment. Roark v. S. Iron R-1 Sch. Dist., 540 F. Supp. 2d 1047, 1056-65 (E.D. Mo. 2008). The court entered a permanent injunction identical to the preliminary injunction we upheld in Doe, 498 F.3d at 884. It also granted a declaratory judgment "on plaintiffs' complaint." The District appeals, arguing that the new policy is constitutional and the permanent injunction should be modified to allow Bible distribution under that policy. Reviewing First Amendment rulings *de novo*, we affirm the permanent injunction but reverse the declaratory judgment. United States v. Corum, 362 F.3d 489, 495 (8th Cir. 2004), cert. denied, 543 U.S. 1056 (2005) (standard of review).

-2-

## I.  Background

In February 2005, District Superintendent Homer Lewis informed the Board that several attorneys, including the District's attorney and its insurer's attorney, had advised the District to discontinue its practice of allowing the Gideons to distribute Bibles to fifth grade students.  Lewis suggested the Board adopt an "open forum" policy if it wished to allow distribution of Bibles.  The Board voted "to pretend this meeting never happened, and to continue to allow the Gideons to distribute Bibles as we have done in the past."  At its March meeting, the Board voted "to delay the Gideon's distribution of Bibles" pending further advice from the District's attorney.

At a September Board meeting, Lewis read letters from the ACLU, the District's attorney, and the District's insurer opining that the Bible distribution practice was unconstitutional.  A Gideons representative attended the meeting.  When asked if the prior practice could be modified to allow school children to distribute the Bibles, he responded that Gideon Bibles may not be distributed unless Gideons are present.  The Board then passed a motion to allow the Gideons to distribute Bibles to fifth graders.  The District's attorney urged the Board to rescind this action.  The Board declined to do so.  Superintendent Lewis resigned.  On October 4, 2005, after meeting with two Board members, the elementary school principal accompanied two Gideons to the fifth grade classrooms and observed as the Gideons passed out Bibles.  This lawsuit followed.

The new policy passed on the eve of the preliminary injunction hearing is set out in Appendix A to our opinion in Doe, 498 F.3d at 884-85.[1]  It provides that an organization wishing to distribute "any printed material" must submit the material to

---

[1]After cross-motions for summary judgment were briefed, the District advised the district court that the Board had amended the new policy.  Although potentially significant in the future, the amendments do not affect our resolution of this appeal.

the Superintendent for approval in advance. All requests "shall be approved" unless the material is libelous, obscene, or unlawful; advertises products or services for sale; endorses a candidate for public office; promotes alcohol, tobacco, drugs, or other illegal activity; or is likely to cause substantial disruption at the school. If approved, the material may be distributed either in front of the administrative offices or at a table in a corner of the cafeteria "either before or after the school day, before or after classes or during lunch time." If a request is denied, the organization may appeal to the Board, which "shall hold a hearing" at its next regular meeting.

In granting plaintiffs summary judgment, the district court applied the test first articulated in Lemon v. Kurtzman, 403 U.S. 602 (1971), and concluded that the new policy violates the Establishment Clause because its purpose is "the promotion of Christianity" and its primary effect is "advancing religion by conveying a message of endorsement to elementary school children." 540 F. Supp. 2d at 1060, 1064.

## II. The Permanent Injunction

The district court permanently enjoined the District from "allowing distribution of Bibles to elementary school children on school property at any time during the school day." Like the preliminary injunction, this decree does not address the District's new policy or prescribe how the District may distribute other materials and literature to students. In the district court, the District argued that plaintiffs are not entitled to a permanent injunction because adoption of the new policy made the challenge to the past practice of Bible distribution moot. The district court properly rejected that contention, 540 F. Supp. 2d at 1055-56, and the District does not raise that issue on appeal. Nor does the District challenge the court's decision that the prior practice of distributing Bibles in fifth grade classrooms should be permanently enjoined as violative of the Establishment Clause, a ruling consistent with our discussion of the merits of this issue in Doe, 498 F.3d at 882-83.

The District argues on appeal that the permanent injunction "impermissibly mandates a content-based restriction on speech in the limited public forum created by the content-neutral [new] policy," a contention we rejected in Doe. Id. at 882-83. Assuming without deciding that the issue is not foreclosed by Doe because of the difference between permanent and preliminary injunctions, we again conclude the contention is without merit.

The First Amendment limits the government's authority to impose content-related restrictions on private speakers in a public forum. See Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106-07 (2001). "However, there is a crucial difference between government speech endorsing religion, which the Establishment Clause forbids, and private speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." Wigg v. Sioux Falls Sch. Dist. 49-5, 382 F.3d 807, 813 (8th Cir. 2004) (quotation omitted). The permanent injunction is based on a judicial determination that the District has for decades impermissibly endorsed a particular religion by allowing the distribution of Bibles in fifth grade classrooms. The injunction imposes a somewhat broader prohibition -- "distribution of Bibles to elementary school children on school property at any time during the school day" -- but its scope is facially reasonable and is not challenged on appeal.[2] The injunction does not address, and therefore does not categorically prohibit, other ways in which the District might, in a neutral manner, facilitate Bible distribution by private parties, such as the distribution of flyers advertising off-campus or after-school distributions. Cf. Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist., 386 F.3d 514, 530-35 (3d Cir. 2004), and cases cited.

The Supreme Court "ha[s] never held the mere creation of a public forum shields the government entity from scrutiny under the Establishment Clause." Santa

---

[2]The District's reply brief argues for the first time that the permanent injunction is "unworkable." We do not consider issues initially raised in a reply brief.

Fe Ind. Sch. Dist. v. Doe, 530 U.S. 290, 303 n.13 (2000). The Board did not repeal its prior actions allowing Bible distribution, and the new policy does not address the distribution of religious materials. But the policy provides that requests "shall be approved" unless the materials fall within limited exceptions that do not apply to Bibles, creating a strong inference that any request by the Gideons to distribute Bibles on school property during the school day will be approved. In these circumstances, the new policy provides no defense to entry of the reasonable permanent injunction at issue. The injunction is affirmed.[3]

## III. The Declaratory Judgment

The district court's final Judgment provides that plaintiffs "shall have judgment against defendants . . . on plaintiffs' complaint." The amended complaint requested the following declaratory relief:

> A. Declaratory judgment finding that Defendants' actions in facilitating the distribution of bibles in fifth grade classrooms during class time violate the Establishment Clause . . . .

> B. Declaratory judgment finding that Defendants' actions in instituting a policy that will facilitate the distribution of Bibles to elementary school students during the school day violate[] the Establishment Clause . . . .

---

[3]Entry of the permanent injunction does not forever preclude the District from allowing distribution of Bibles at South Iron Elementary under all circumstances. "[A] federal court's regulatory control . . . [does] not extend beyond the time required to remedy the effects of past constitutional violations." Ass'n for Retarded Citizens of N.D. v. Sinner, 942 F.2d 1235, 1239 (8th Cir. 1991), quoting Bd. of Educ. v. Dowell, 498 U.S. 237, 248 (1991). Thus, the District may seek relief under Rule 60(b)(5) of the Federal Rules of Civil Procedure if future circumstances warrant a request that the district court modify or terminate the injunction.

The Declaratory Judgment Act, 28 U.S.C. § 2201, is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952). We review a district court's exercise of this remedial power for abuse of discretion. See Morrison v. Mahaska Bottling Co., 39 F.3d 839, 846 (8th Cir. 1994). That review is relatively rigorous. See Alsager v. Dist. Court, 518 F.2d 1160, 1163 (8th Cir. 1975) ("the appellate court may substitute its judgment for that of the lower court.").

1. The declaratory judgment incorporating Paragraph A of the amended complaint is superfluous. A major purpose of the Declaratory Judgment Act was "to provide an *alternative* [remedy] to injunctions against state officials," particularly in situations where a more intrusive injunction would not be appropriate. Steffel v. Thompson, 415 U.S. 452, 467 (1974) (quotation omitted, emphasis added). Here, the operative remedy is a permanent injunction based on the district court's determination that the Establishment Clause has been violated. Like any other, this injunction may be the subject of future judicial proceedings. Those proceedings should not be burdened by a declaratory judgment whose presence would only add confusion and complexity. This portion of the declaratory judgment is vacated.

2. The declaratory judgment incorporating Paragraph B of the amended complaint is the crux of the parties' dispute on appeal. The first problem we encounter is discerning what the Judgment "on plaintiffs' complaint" declares, given that Paragraph B of the amended complaint was so ambiguously worded. The Judgment does not expressly declare the new policy unconstitutional, yet both parties briefed the appeal as though the district court declared the new policy facially unconstitutional. That view of the remedy is supported by the district court's Memorandum and Order, which stated that "Plaintiffs are entitled to both declaratory and injunctive relief" because "the new policy violates the Establishment Clause." 540 F. Supp. 2d at 1065. But the Judgment neither enjoined the District from implementing the new policy nor declared that policy unconstitutional. Rather, it

cross referenced an amended complaint seeking a declaration "that Defendants' actions in instituting" the new policy violated the Establishment Clause. The precise import of the declaratory judgment is hopelessly obscure. Given its impact on the operations of a state governmental entity, this ambiguity alone requires reversal.

The second problem we encounter is determining what remedial purpose this declaratory judgment serves. A permanent injunction has been entered prohibiting the specific practice determined to be unconstitutional, distribution of Bibles to elementary school children. What more is needed? The district court's Memorandum and Order discussed this issue as though Bibles have been distributed under the new policy. But the preliminary injunction was entered just a few days after the policy was adopted. The text of the new policy and the statements of individual Board members raise a strong inference that, absent an injunction, a request from the Gideons to distribute Bibles would be approved. But the permanent injunction eliminates that risk. What is left is a facial challenge to a broad policy that has never been implemented (so far as the record reveals) and that is constitutionally permissible in a host of other applications. A declaratory judgment prohibiting implementation of that policy is both unnecessary and inappropriate.

The district court invalidated the policy primarily on the ground that it fails the first part of the <u>Lemon</u> test -- "the statute must have a secular legislative purpose." 403 U.S. at 612. Though the <u>Lemon</u> test has had a "checkered career," <u>Van Orden v. Perry</u>, 545 U.S. 677, 700 (2005) (Breyer, J., concurring), we apply it to this type of Establishment Clause challenge.[4] The district court held that "the District's purpose in passing the new policy was the promotion of Christianity," based upon the court's

---

[4]<u>Corum</u>, 362 F.3d at 495. "Taking our cue" from <u>Van Orden</u>, we did not apply the <u>Lemon</u> test in <u>ACLU Neb. Found. v. City of Plattsmouth</u>, 419 F.3d 772, 778 n.8 (8th Cir. 2005) (en banc), a Ten Commandments display case like <u>Van Orden</u>. The <u>Lemon</u> test may be better suited to cases challenging statutes and policies, rather than specific government actions. But the issue does not affect our resolution of this case.

review of the District's historical practices, the School Board's "behavior" in passing the new policy only ten days before the preliminary injunction hearing, testimony by individual Board members that there was nothing wrong with the prior practice, the District's failure to repeal prior motions allowing the Gideons to distribute Bibles, and the absence of a formal statement of governmental purpose. Roark, 540 F. Supp. 2d at 1060-62.

While past practice and the views of individual Board members are relevant, the district court wholly ignored the proper initial inquiry, whether the text of the new policy evidences an unconstitutional purpose. See Santa Fe, 530 U.S. at 314-15.[5] On its face the new policy makes the South Iron school a limited public forum for the distribution of a wide variety of literature. "[O]pening the schools for expressive conduct to community and student groups serves the secular purpose of providing a forum for an exchange of ideas and social intercourse." Good News/Good Sports Club v. Sch. Dist., 28 F.3d 1501, 1508 (8th Cir. 1994), cert. denied, 515 U.S. 1173 (1995). We know of no case holding that the creation of a limited public forum was not a secular purpose satisfying this part of the Lemon test. See Widmar v. Vincent, 454 U.S. 263, 271 & n.10 (1981).

Though the District did not issue a formal statement of purpose when enacting the policy, former Superintendent Lewis and the District's attorney had advised the Board that creation of a limited public forum was necessary to comply with the Establishment Clause. The policy itself applies to all persons or groups wishing to distribute literature to students, not just to Bible distribution by the Gideons, unlike the policy at issue in Santa Fe, which addressed only the issue of prayer at school functions. In these circumstances, although it is the duty of courts to "distinguish a

_____

[5]The Supreme Court is "reluctan[t] to attribute unconstitutional motives to the States, particularly when a plausible secular purpose for the state's program may be discerned from the face of the statute." Mueller v. Allen, 463 U.S. 388, 394-95 (1983).

sham secular purpose from a sincere one," Santa Fe, 530 U.S. at 308 (quotation omitted), a facial challenge to the entire policy prior to its implementation is an inappropriate time to determine whether the District's secular purpose was a sham, particularly when the permanent injunction provides a complete remedy to the Establishment Clause violation at issue.[6] Presumably, if the District's only purpose was to facilitate Bible distribution that has now been enjoined, the new policy will be voluntarily rescinded.

Another reason we reject the district court's Lemon analysis is that its emphasis on past practice and the views of individual Board members would preclude the District from *ever* creating a limited public forum in which religious materials may be distributed in a constitutionally neutral manner. Past actions do not "forever taint any effort [by a government entity] to deal with the subject matter." McCreary County v. ACLU, 545 U.S. 844, 874. The courts must be "particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools." Edwards v. Aguillard, 482 U.S. 578, 583-84 (1987). But school officials must remain free to experiment in good faith with new policies to accommodate the tensions between educational objectives, non-interference with private parties' rights under the Free Exercise Clause, and compliance with the school's Establishment Clause obligations. Cf. Weinbaum v. City of Las Cruces, 541 F.3d 1017, 1038 (10th Cir. 2008); Peck v. Upshur County Bd. of Educ., 155 F.3d 274 (4th Cir. 1998). "The Establishment Clause is properly understood to prohibit the use of the Bible and other religious documents in public school education only when the purposes of the use is to advance a particular religious belief." Edwards, 482 U.S. at 608 (Powell, J., concurring).

---

[6]In Santa Fe, the Court concluded that the text of the invocation policy evidenced an unconstitutional purpose. 530 U.S. at 314-15. Here, by contrast, the scope of the new policy is broad, and its text is silent regarding the distribution of religious materials, giving no facial indication of a religious purpose. The difference counsels against entertaining a facial challenge.

Facial Establishment Clause challenges to government policies are appropriate if "mere passage . . . has the purpose and perception of government establishment of religion," like the prayer policy at issue in Santa Fe, 530 U.S. at 314. However, facial challenges "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." Wash. State Grange v. Wash. State Republican Party, 128 S. Ct. 1184, 1191 (2008) (quotations omitted). Here, the parties and the district court lost sight of this well-established principle, which applies with particular force to exercise of a court's declaratory judgment discretion "where governmental action is involved." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). As the permanent injunction has remedied the specific issue litigated, entering an ambiguous declaratory judgment that seemingly invalidates a facially neutral policy that has never been implemented was ill-advised.

The judgment of the district court granting a permanent injunction is affirmed. The judgment of the district court granting a declaratory judgment is reversed.

BEAM, Circuit Judge, concurring.

I concur in the court's opinion affirming a permanent injunction. I write separately to express my concern over the standing alone breadth of the injunction's prohibitory language. It is my understanding that the stated restraint prohibits only an earlier practice of the school district that permitted Gideons to personally distribute (Christian) Bibles to fifth grade students inside their classroom during school hours. I believe the injunction does not purport to address the merits, or lack thereof, of any district policies concerning distribution of literature to students under other circumstances. And, as noted by the court in footnote 3, ante at 6, any attempted overreaching by any party or the district court may be immediately remedied through

equitable relief under Federal Rule of Civil Procedure 60(b)(5).  See <u>Horne v. Flores</u>, Nos. 08-289, 08-294, 2009 WL 1789470, at *11 (U.S. June 25, 2009).

Accordingly, I concur.

KYLE, District Judge, concurring.

I concur in the court's opinion and write separately only to express my view that the record here amply supports – indeed, likely compels – the district court's conclusion that the School District's new policy was passed for the purpose of promoting Christianity and, hence, violated <u>Lemon</u>.  (<u>See</u> slip. op. at 8-11.)  Because I believe the portion of the court's opinion discussing the new policy under <u>Lemon</u> is *dicta*, however, I join in the opinion.

_____