# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2296

_____

Victory Through Jesus Sports Ministry &ast;
Foundation, &ast;
&ast;
  Plaintiff - Appellant, &ast;   Appeal from the United States
&ast;   District Court for the
v. &ast;   Western District of Missouri.
&ast;
Lee's Summit R-7 School District, et al., &ast;
&ast;
  Defendants - Appellees. &ast;

_____

Submitted: January 11, 2011
Filed: May 20, 2011

_____

Before WOLLMAN, LOKEN, and SMITH, Circuit Judges.

_____

LOKEN, Circuit Judge.

Victory Through Jesus Sports Ministry Foundation ("Victory") commenced this § 1983 action seeking injunctive and declaratory relief and damages against Lee's Summit R-7 School District ("the District") and its Superintendent. The complaint alleged that defendants violated Victory's rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment by refusing Victory equal access to the District's "Backpack Flyers for Students" program. Victory filed a motion for preliminary injunction, and the parties consolidated the evidentiary hearing on that motion with trial on the merits. See Fed. R. Civ. P. 65(a)(2). Following the

hearing, the district court[1] entered an Order and Opinion denying Victory's claims for injunctive relief and damages on the merits. Victory appeals the denial of First Amendment relief. Reviewing the Order under the standards that apply after a bench trial, we affirm.

## I.

The District serves nearly 100,000 residents in Lee's Summit and surrounding communities in a suburban area east and southeast of Kansas City. For many years, the District routinely granted non-profit organization requests that their informational flyers be sent home in the backpacks of the District's elementary school students. By 2005, the District had grown to over 9,000 elementary students, and the volume of flyer requests had reached burdensome proportions and triggered parental complaints that children were bringing home too many non-school-related papers. In response, the District published new "Procedures for Flyer Distribution to Students" that provided as relevant here:

> Due to the overwhelming number of requests the district receives to send information home with elementary students in their backpacks, the district limits distribution to not-for-profit organizations and approved events sponsored by civic groups that directly benefit R-7. . . .
>
> *Exception for district wide backpack distribution: Community youth organizations will be provided a one-time opportunity to distribute program flyers at the beginning of school on either the first or second backpack distribution date.

Victory is a non-profit organization formed to "use sports as evangelism" to "nurture the spiritual development" of children and to aid in their development as

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

leaders and people of character. Victory hosts five-day summer soccer camps, open to children of all faiths, at which young participants develop soccer skills and are taught biblical principles focusing on character, integrity, and leadership. In the spring of 2008, Victory requested for the first time that the District distribute to elementary students a flyer promoting a "Victory Soccer Camp" that summer. The District responded that the request was contrary to its once-in-the-fall Procedures, enclosed a copy of the Procedures, and offered to post Victory's flyer on the District's website if Victory submitted its "not-for-profit status." Victory did so, and its flyer was then posted. Victory held its summer soccer camp in June 2008 and "had a wonderful response from the community."

In July 2008, the District published a more comprehensive document entitled "Public Solicitations/Advertising in District Facilities" and identified as a 2008-2009 "KI-AP."[2] The KI-AP included modified Procedures for Informational Flyers:

> Flyers that have been approved will be sent home with students and/or posted on the district's website.
>
> Only flyers from the following groups/organizations will be approved for distribution: Lee's Summit Educational Foundation, PTA, Lee's Summit Chamber of Commerce, Lee's Summit Symphony Orchestra, Lee's Summit Parks and Recreation, Greenwood Sports Association, Lee's Summit Cares, Longview College for Kids, D.A.R.E., Jackson County, LS Girls' Softball Association, LS Baseball Association, LS Football

---

[2]The District had previously adopted a broad "KI" adapted from model policies circulated by the Missouri School Board Association. The KI began by stating, "It is the intent of the district to operate a nonpublic forum." It provided that advertising on District property or at District events may not include information that is obscene, libelous, insulting, indecent, vulgar, advertises products not permitted to minors, or will cause substantial disruption of the school or school activities or the commission of unlawful acts. The addition of a KI-AP in 2008 was adopted by the District with advice of counsel.

Association, LS Soccer Association, LS Junior Basketball, Downtown Lee's Summit Main Street, each R-7 school, its Partners in Education* and its Booster Clubs.

* * * * *

*Exception for district wide backpack distribution*: Community youth organizations such as Boy Scouts and Girl Scouts will be provided a one-time opportunity to distribute program flyers at the beginning of school on either the first or second backpack distribution date.

Despite knowing of the District's once-in-the-fall restriction, Victory did not request distribution of a flyer promoting its planned 2009 summer soccer camp until January 2009, after the authorized time for distribution of community youth organization flyers. The District approved Victory's flyer for website posting only and declined a letter request from Victory's counsel that the KI-AP policy be changed "to allow athletic programs such as Victory Soccer Camp access to the District's literature distribution on the same terms and conditions as those organizations currently permitted to distribute 'Backpack Flyers.'" Victory then retained a mass mailing firm to send letters to homes in the District at increased expense to Victory.

Victory commenced this action in October 2009. In December 2009, the District adopted a 2009-2010 KI-AP allowing community youth organizations such as Victory to distribute program flyers in September, January, and April. In April 2010, the District approved a flyer promoting Victory's 2010 summer soccer camp for backpack distribution. Victory did not request that its flyers be distributed more than once for its 2010 summer soccer camp in Lee's Summit.

In dismissing Victory's claims, the district court found that the District did not have a policy or practice of permitting the general public to distribute flyers at its schools; that the District's sole purpose in adopting the KI-AP was to limit the volume of promotional materials sent home with students; that in limiting this service the

District "allocate[d] most of its flyer distribution efforts" to community-based groups with which it had reciprocal agreements or that had provided longstanding support to the District; that the District's decisions limiting distribution of Victory's flyers were not based upon Victory's religious orientation; and that Victory had no present intent or financial ability to distribute flyers at any time other than in April. On appeal, Victory does not argue that these findings are clearly erroneous.

## II.

The parties agree that Victory's promotional flyers are speech entitled to First Amendment protection. But it is well-established that "the government need not permit all forms of speech on property that it owns and controls." Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678 (1992). Therefore, Victory does not have a constitutional right to free distribution of its flyers into the backpacks of public school children. Rather, Victory has a right not to be denied this service for constitutionally impermissible reasons *if* the District chooses to provide the service to selected speakers.

In defining the parameters of a speaker's First Amendment right of access to public property, the Supreme Court looks first to the nature of the forum the public entity is providing. "The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 44 (1983). The greatest protection is provided for traditional public fora -- public areas such as streets and parks that, since "time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Id. at 45 (quotations omitted). Content-based exclusions from such a forum must be narrowly drawn and necessary to serve a compelling state interest. Content-neutral regulations must be "narrowly tailored to serve a significant government interest, and leave open ample alternative channels

channels of communication." Id. The same protection is provided to speakers in a "designated public forum," defined as "public property which the State has opened for use by the public as a place for expressive activity." Id. "The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." Cornelius v. NAACP Legal Def. & Educ. Fund, 473 U.S. 788, 802 (1985).

Victory argues that the District's "Backpack Flyer" distribution service was a designated public forum because it was provided to "dozens of private groups." This contention is without merit. "That [expressive] activity occurs in the context of the forum created does not imply that the forum thereby becomes a public forum for First Amendment purposes." Cornelius, 473 U.S.C. at 805. Only if the public entity provides "general access" does the public property become a designated public forum; if access is "selective," it is a nonpublic forum. Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 680 (1998), citing and quoting Cornelius, 473 U.S. at 803, 805. Here, as in Cornelius, the District intended to restrict access to student backpacks, particularly when the demand for this service became intolerably great.

When public property is not by tradition or designation a public forum, the controlling public entity "may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Perry, 460 U.S. at 46. The Supreme Court initially referred to this type of property as a "nonpublic forum." See Forbes, 523 U.S. at 679; Cornelius, 473 U.S. at 805. Some later cases have referred to the opening of government facilities for limited purposes as creating a "limited public forum." See Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106 (2001). But this change in nomenclature has not changed the governing standard. A limited public forum, like a nonpublic forum, may be "limited to use by certain groups or dedicated solely to the discussion of certain subjects," and the public entity "may impose restrictions on speech that are reasonable

and viewpoint-neutral." <u>Christian Legal Soc'y Chapter of the Univ. of Cal., Hasting College of Law v. Martinez</u>, 130 S. Ct. 2971, 2984 n. 11 (2010), quoting <u>Pleasant Grove City v. Summum</u>, 129 S. Ct. 1125, 1127 (2009).[3] The district court properly applied this standard in analyzing Victory's claims.

### III.

Alternatively, Victory argues that, even if the flyer distribution service was a nonpublic or limited public forum, Victory is entitled to injunctive relief and damages because its continued exclusion "from the preferred user 'backpack flyer' forum" in which flyers could be distributed up to once a week throughout the school year was neither reasonably related to the purposes of the forum nor viewpoint neutral. Like the district court, we disagree.

**A. Reasonableness.** Control over access to a nonpublic forum may be based on the subject matter of the speech, on the identity or status of the speaker, or on the practical need to restrict access for reasons of manageability or the lack of resources to meet total demand. <u>See</u> <u>Cornelius</u>, 473 U.S. at 806-09. The restriction on access must be "reasonable in light of the purpose which the forum at issue serves." <u>Perry</u>, 460 U.S. at 49. But a restriction "need not be the most reasonable or the only reasonable limitation." <u>Cornelius</u>, 473 U.S. at 808. The reasonableness of a restriction on access is supported when "substantial alternative channels" remain open for the restricted communication. <u>Perry</u>, 460 U.S. at 53.

---

[3]These decisions have cleared up circuit court confusion regarding the standard to apply to limited public fora that we discussed in <u>Bowman v. White</u>, 444 F.3d 967, 975-76 (8th Cir. 2006). The standard is now clear. Controversy remains over the concept of viewpoint neutrality, particularly when government has restricted access because of a speaker's religious orientation, as in <u>Milford</u>, 533 U.S. at 107-12 & n.4. <u>See</u> <u>Martinez</u>, 130 S. Ct. at 3009 (Alito, J., dissenting).

In this case, Victory defines the nonpublic forum as the "Backpack Flyers" segment of the District's KI-AP Procedures. But the definition is flawed. As the district court noted, a principal purpose of the forum was to "educate and inform students and their parents of local activities or issues involving the community." That purpose was served by the District's website, as well as its physical distribution of flyers, working in tandem. For example, Dr. Mary Alice Neal, the District's Assistant Superintendent for Elementary Instruction, testified that the website potentially reached a wider audience. Flyers were only sent home in elementary students' backpacks because the District knew older students would not take them home.

Limitations on backpack flyer distribution were first adopted in 2005 to reduce the volume to manageable levels and to respond to parent complaints. Those reasons were reasonably related to the nonpublic forum's purpose. The District amended the limitations by adopting KI-AP procedures in July 2008 and December 2009 before eliminating backpack distribution altogether in July 2010. This evolution is neither surprising nor sinister, even if prompted in part by Victory's lawsuit. "[S]chool officials must remain free to experiment in good faith with new policies to accommodate the tensions between educational objectives," the interests of private parties, and their First Amendment rights. Roark v. S. Iron R-1 Sch. Dist., 573 F.3d 556, 564 (8th Cir. 2009).

Victory contends that it was unreasonably excluded from the Backpack Flyer program. The evidence at trial established that Victory was not excluded from the forum, properly defined. Its access was restricted. Victory's first request for flyer distribution in the spring of 2008 was denied as untimely. But it was immediately granted access to the District's website, which it used to promote a successful soccer camp that summer. That alternative avenue of communication, without more, made the limited restriction constitutionally reasonable. See Martinez, 130 S. Ct. at 2991, and cases cited.

Victory's second request for flyer distribution was made in January 2009. The request was untimely under the July 2008 KI-AP. The District again posted Victory's flyer on its website, and the following school year it amended the KI-AP to permit distribution of three flyers per year if requested by a non-profit community youth organization such as Victory. In April 2010, the District distributed a flyer promoting Victory's 2010 summer soccer camp, the only distribution Victory requested that year. Although Victory's President testified that a policy permitting flyer distribution only at three specific times was insufficient, "[t]he First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message." Cornelius, 473 U.S. at 809. Victory proved no ongoing or future harm from the District's decision to classify Victory under the KI-APs as a community youth organization.

**B. Viewpoint Neutrality.** Victory argues that its exclusion from the KI-AP preferred backpack distribution system was not viewpoint neutral because Victory met or exceeded the District's articulated viewpoint neutral reasons for granting some organizations preferred access; therefore, "the only plausible explanation for Victory's exclusion from the preferred distribution forum is that it was based upon Victory's religious viewpoint." Victory relies upon Supreme Court decisions holding "that speech discussing otherwise permissible subjects cannot be excluded from a limited public forum on the ground that the subject is discussed from a religious viewpoint." Milford, 533 U.S. at 112.[4]

---

[4]In those cases, where restrictions were based upon Establishment Clause concerns, proof of religious discrimination violating the Free Speech Clause did not require proof that school authorities disapproved of the private group's religious views. In more typical nonpublic forum cases, however, "viewpoint neutral" means that a restriction may not be "impermissibly motivated by a desire to suppress a particular point of view." Cornelius, 473 U.S. at 812-13; see Martinez, 130 S. Ct. at 2993-94; Forbes, 523 U.S. at 682-83; Lee, 505 U.S. at 679; Perry, 460 U.S. at 46.

Victory's soccer camps have a religious orientation, and its complaint alleged religious discrimination. However, unlike the record in Good News/Good Sports Club v. Ladue School District, 28 F.3d 1501, 1507 (8th Cir. 1994), the undisputed evidence established, and the district court found, that the District's responses to Victory's requests for distribution of its flyers in student backpacks were in no way based upon or influenced by Victory's religious orientation, or by whether District officials agreed or disagreed with Victory's point of view. Rather, the district court found that Victory was not included in the KI-AP preferred group of speakers because of its status as an organization outside of the District's community that had no special relationship with the District. At oral argument, counsel for Victory conceded that its appeal is not based upon a claim of religious discrimination.

On this record, we conclude that the District adopted reasonable restrictions on the backpack distribution of flyers to elementary school students, that it applied those restrictions in a viewpoint neutral manner, and that it imposed no substantial restriction on Victory's right to access this nonpublic forum. Therefore, Victory failed to prove a violation of its First Amendment rights, and the district court properly denied its claims for injunctive relief and damages.

**C. A Facial Challenge.** Victory further argues that, even if it was not injured, it may facially challenge what it characterizes as the unreasonable access granted to "preferred users" in the KI-APs and the "unbridled discretion" of Assistant Superintendent Neal to grant preferred access to additional non-profit organizations. Facial challenges to statutes that restrict speech are granted "sparingly and only as a last resort." Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973). To prevail, a plaintiff must show that a statute is substantially overbroad by demonstrating "that application of the provision will lead to the suppression of speech." Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 580 (1998).

The grant of unbridled discretion in a licensing statute is suspect because it "constitutes a prior restraint and may result in censorship." City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 757 (1988). But facial challenges are disfavored for several reasons. Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450 (2008). Neither the Supreme Court nor this court has ever applied a stringent, facial standard of judicial oversight to the discretionary decisions of school officials administering a nonpublic educational forum. See Roark, 573 F.3d at 564. In our view, Victory's contrary contention cannot be squared with the Supreme Court's decision in Forbes, which upheld a public broadcaster's *ad hoc* but reasonable exclusion of a qualified candidate from a campaign debate over a dissent that objected to the exercise of "nearly limitless discretion" in controlling a nonpublic forum for *political* speech. 523 U.S. at 686 (Stevens, J., dissenting).[5]

Moreover, the facts of this case demonstrate that Assistant Superintendent Neal exercised far less than unbridled discretion. Trial testimony demonstrated that the "preferred groups" listed in the KI-APs had longstanding ties to the Lee's Summit community or strong reciprocal relationships with the District, a rational basis for granting selective access to a nonpublic forum. The list was compiled with input from various sources, and of the six other groups granted comparable distribution rights by Dr. Neal, five distributed materials only to a single school, and all had the same characteristics as the organizations listed in the KI-APs. This kind of limited discretion provides the flexibility needed to properly serve the District's educational and community-service missions. And non-profit community youth organizations that were not granted relatively unlimited backpack distribution could post their flyers and other information on the District's website and no doubt had other ways of reaching District families, such as the mass mailing by Victory in 2009. In these circumstances, case-by-case adjudication of District decisions to deny a particular

---

[5]To the extent Child Evangelism Fellowship v. Anderson Sch. Dist., 470 F.3d 1062, 1068-69 (4th Cir. 2006), is to the contrary, we decline to follow that decision.

speaker's request for additional distribution of its promotional flyers is more than adequate to protect the First Amendment rights of all eligible speakers to access this nonpublic forum.[6]

The judgment of the district court is affirmed.

_____

---

[6]We are advised that, one month after the district court's ruling, the District closed the backpack flyer forum by publishing a revised KI-AP providing that it will only "post informational flyers from not-for-profit organizations on the district's website." This illustrates the Supreme Court's caution that facing public entities operating nonpublic fora "with the prospect of cacophony, on the one hand, and First Amendment liability, on the other . . . . does not promote speech but represses it." Forbes, 523 U.S. at 681-82 (1998).