PER CURIAM.
Shirley Phelps-Roper brought this action to enjoin the enforcement of the Nebraska Funeral Picketing Law (NFPL), arguing that it violates her First Amendment right to free speech. She appeals a *488 district court order denying her motion for a preliminary injunction. Bound by a previous panel decision involving a similar statute, the same procedural posture on appeal, and the identical plaintiff, Phelps-Roper v. Nixon, 545 F.3d 685 (8th Cir. 2008), we reverse.
Phelps-Roper is a member of the Westboro Baptist Church (WBC), a group which believes that God is killing Americans as punishment for its tolerance of homosexuality. The WBC espouses its beliefs in. protests staged at funerals, including those of fallen American soldiers. They hold large signs with slogans such as “God Hates Fags” and “Thank God for Dead Soldiers.”
The NFPL restricts picketing at a funeral from one hour before the funeral until two hours afterward. Neb.Rev.Stat. § 28-1320.03(1). Picketing is defined as “protest activities ... within three hundred feet of a cemetery, mortuary, church or other place of worship during a funeral.” [1] Id. § 28-1320.02(2). The NFPL does not apply to “funeral processions on public streets or highways.” Id. § 28-1320.02(1).
In her motion for a preliminary injunction, Phelps-Roper claimed that the NFPL violates the First Amendment both on its face and as applied to her. The district court first determined that the law was a content neutral speech regulation and therefore applied intermediate scrutiny. See Nixon, 545 F.3d at 690-91. It concluded the NFPL survived that level of scrutiny because it “is narrowly tailored to serve a significant government interest and leaves ample alternative channels for communications that are protected by the First Amendment.” See id. at 691. With respect to the as applied challenge, the district court found that Phelps-Roper had not shown that she had been treated differently from other protesters. Having concluded that Phelps-Roper’s claims were unlikely to succeed, the district court denied her motion for a preliminary injunction.
Phelps-Roper contends that the district court should have applied strict scrutiny to the NFPL and, in the alternative, that the NFPL cannot not survive intermediate scrutiny because it does not serve a significant government interest, is not narrowly tailored, and does not afford her ample alternative channels of communication.
We review the denial of a preliminary injunction for an abuse of discretion, which occurs when “the district court rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions.” Planned Parenthood v. Rounds, 530 F.3d 724, 733 (8th Cir.2008) (en banc). Before enjoining the “implementation of a duly enacted state statute,” a court must “make a threshold finding that [the movant] is likely to prevail on the merits.” Id. at 732-33. When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied. See Nixon, 545 F.3d at 690.
The NFPL regulates speech in traditional public fora, and the level of scrutiny to be applied depends on whether or not the regulation is content neutral. Id. at 691. In deciding if a statute is content neutral, the “plain meaning of the text controls, and the legislature’s specific motivation ... is not relevant, so long as the provision is neutral on its face.” Id. Like the statute at issue in Nixon, 545 F.3d at 690-91, the NFPL is content neu *489 tral because it regulates all protest activities within a certain distance and time frame, regardless of content or viewpoint. See also Hill v. Colorado, 530 U.S. 703, 723-24, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000); Phelps-Roper v. Strickland, 539 F.3d 356, 360-61 (6th Cir.2008). The district court therefore correctly applied intermediate scrutiny to inquire whether the statute was narrowly tailored to serve a significant government interest and left ample alternative channels of communication. See Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).
The district court concluded that Nebraska had a significant interest in protecting the privacy of family members attending a loved one’s funeral. It reasoned that the captive audience doctrine, which recognizes such an interest in protecting unwilling listeners from unavoidable speech, applied in the funeral context. See Frisby v. Schultz, 487 U.S. 474, 484-85, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (applying doctrine to private residences); Hill, 530 U.S. at 718, 120 S.Ct. 2480 (applying doctrine to patients entering medical facilities); Strickland, 539 F.3d at 362-66 (applying doctrine to funeral attendees).
Phelps-Roper argues that this conclusion is undercut by our opinion in Nixon, where we doubted that her First Amendment speech rights were outweighed by state interests “in preserving and protecting the sanctity and dignity of memorial and funeral services” and “protecting the privacy of family and friends of the deceased during a time of mourning and distress.” 545 F.3d at 691-92.
In Phelps-Roper v. City of Manchester, Missouri, we recognized Nixon's conclusion that the “home is different, and, in our view, unique” and that “other locations, even churches, [cannot] claim the same level of constitutionally protected privacy.” 658 F.3d 813, 816 (8th Cir.2011) (citing Nixon, 545 F.3d at 692) (internal quotations omitted). On that basis, we affirmed the district court’s determination that a Missouri funeral protest statute violated the First Amendment. Id.
We agree that the district court here was required to follow our Nixon precedent, which concluded that the government was unlikely to prove a significant interest in protecting funeral attendees. The Nixon panel cited our court’s earlier refusal to extend application of the captive audience doctrine beyond the residential context. Olmer v. City of Lincoln, 192 F.3d 1176, 1182 (8th Cir.1999). The district court’s efforts to distinguish Nixon, see Phelps-Roper v. Heineman, 720 F.Supp.2d 1090, 1098-1100 & n. 2 (D.Neb.2010), are not persuasive. That the Nixon panel erroneously used the term “compelling interest” rather than “significant interest” in describing Olmer is not a sufficient basis to avoid circuit precedent that expressly applied the “holding in Olmer.” Nixon, 545 F.3d at 692; cf. Olmer, 192 F.3d at 1182 (concluding that the city lacked a “significant governmental interest”). Nor can Nixon be distinguished based on the nature of the mourners protected. The Missouri statute, like the Nebraska statute, protected family members attending a relative’s funeral. Nixon was premised on the panel’s view, derived from Olmer, that the government has no significant interest in protecting unwilling listeners outside the context of a home.
We do not make a final determination of the constitutional issues. Nixon, 545 F.3d at 694. Rather, we conclude consistent with Nixon that Phelps-Roper has shown a likelihood of success sufficient to warrant a preliminary injunction pending a full examination of the merits. See id. at 694. We therefore need not address ap *490 pellant’s as applied challenge to the statute.
Since Phelps-Roper was likely to succeed on the merits of her facial challenge under Nixon, the district court should have enjoined enforcement of the NFPL. The order denying a preliminary injunction is reversed, and the case is remanded to the district court for further proceedings.

. The NFPL was recently amended to expand the buffer zone to 500 feet. As that amendment has not yet taken effect, we examine the law in its current form.