# United States Court of Appeals
### For the Eighth Circuit

_____

No. 11-3225

_____

Child Evangelism Fellowship of Minnesota

*Plaintiff - Appellant*

v.

Minneapolis Special School District No. 1

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 16, 2012
Filed: August 29, 2012

_____

Before WOLLMAN, BEAM, and LOKEN, Circuit Judges.

_____

BEAM, Circuit Judge.

Child Evangelism Fellowship of Minnesota (CEF) appeals the district court's denial of a preliminary injunction against the Minneapolis Special School District No. 1 (the district) in this First Amendment case. We reverse.

## I.    BACKGROUND

CEF is the local chapter of an international non-profit organization that conducts weekly "good news clubs" (GNC) for children ages 5 through 12, which are available to all elementary-aged students regardless of their religious beliefs or lack thereof. During the meetings there are Bible stories and lessons on moral and character development, creative learning activities, prayer, songs and similar activities. The meetings are free for the child attendees. The goals of the GNCs are to encourage learning, spiritual growth, service to others and leadership development. The kids are taught Christian Biblical principles, moral values such as honesty, forgiveness, and similar character qualities.

In 2000, CEF obtained a permit from the district which granted it access to facilities at the Jenny Lind Elementary School to host GNC meetings. This permit gave CEF access to the district's literature distribution forum. The flyers distributed in this manner by CEF contained a disclaimer that the district did not sponsor or endorse CEF's activity. Pursuant to its permit, CEF apparently operated the GNCs without incident until 2005. During the 2005-06 school year, the district either changed or formalized the way that it screened groups using its facilities for after-school activities. Groups seeking facility access apply to become "community partners" with the school. Community partners have access to district facilities and use the district's flyer distribution system to reach students. A subset of the community partners are asked to be a part of the after-school enrichment program, pursuant to Minnesota Statute § 124D.19(12), which provides that districts operating a community education program may offer youth after-school programs designed to encourage social, mental, physical and creative abilities, promote leadership development and improve academic performance. A district implementing such a program must use an advisory council whose members represent various community groups defined in the statute. Id. The advisory council is in charge of making sure that groups in the enrichment program promote the values stated in § 124D.19. Also,

each district must employ a "site coordinator" whose job it is to coordinate the after-school program and decide which groups will be invited to participate in the program at a particular school.

CEF became a community partner in 2005 after going through the application process and also became a member of the after-school program, without incident, until the 2008-09 school year. That year, the Jenny Lind school hired a new site coordinator, Sandra McDonald, who became concerned about the religious content of the CEF clubs after overhearing a prayer and reference to Jesus Christ during a CEF meeting. Due to these concerns about the "prayer and proselytizing," which occurred at GNC meetings, CEF was ultimately informed that it would be removed from the after-school program effective in the 2009-10 school year. It still had access to school facilities for meetings as a community partner, but removal from the after-school program meant that it no longer had access to transportation and food services from the district. Attendance at CEF meetings declined greatly (from 47 students in the 2008-09 school year, to 10 in the 2009-10 school year and just 5 students in the 2010-11 school year) after its removal from the after-school program. Other community partners which remain in the after-school program include the Boy and Girl Scouts, Big Brothers/Big Sisters, and Boys and Girls Clubs of the Twin Cities.

CEF sought injunctive and declaratory relief and damages under 42 U.S.C. § 1983 for violation of its free speech and equal protection rights under the First and Fourteenth Amendments. The district court denied CEF's motion for a preliminary injunction, concluding that CEF's GNC was distinguishable from those discussed in Good News Club v. Milford Central School, 533 U.S. 98 (2001) and Good News/Good Sports Club v. School District of the City of Ladue, 28 F.3d 1501 (8th Cir. 1994), and that CEF was not likely to prevail in its claim that the district's actions constituted impermissible viewpoint discrimination under the First Amendment. Further, the court found that groups participating in the after-school program engaged in school-sponsored speech subject to the restrictions of the Establishment Clause.

Finally, the court found that because CEF was still able to utilize the premises as a community partner, it could not establish irreparable harm. CEF appeals.

## II.    DISCUSSION

We review the denial of preliminary injunctive relief for an abuse of discretion. Doe v. S. Iron R-1 Sch. Dist., 498 F.3d 878, 880 (8th Cir. 2007). An abuse of discretion occurs if the district court based its decision on an erroneous legal premise. FTC v. Freeman Hosp., 69 F.3d 260, 267 (8th Cir. 1995). We review the district court's legal conclusions de novo. Grand River Enters. Six Nations, Ltd. v. Beebe, 467 F.3d 698, 701 (8th Cir. 2006).

To receive injunctive relief, a movant must establish the following factors: (1) a likelihood of success on the merits; (2) irreparable harm; (3) that the balance of the harms of granting or denying the injunction are in its favor; and (4) that granting the injunction is in the public's interest. CDI Energy Servs. v. West River Pumps, Inc., 567 F.3d 398, 401-02 (8th Cir. 2009) (citing Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). The gravamen of the district court's decision was that CEF did not establish its likelihood of success on the merits of its constitutional claims. As noted above, the district court also found that CEF could not establish irreparable harm because it could still utilize the school's premises. However, we find that the record evidence, showing the loss of attendance at CEF's meetings, from 47 students in the 2008-09 school year to 5 participants during the 2010-11 school year, is enough to establish irreparable harm. Furthermore, as our discussion will demonstrate, infra, CEF can demonstrate that it has a high likelihood of success on the merits of its First Amendment claim, which is likely enough, standing alone, to establish irreparable harm. Lowry ex rel. Crow v. Watson Chapel Sch. Dist., 540 F.3d 752, 762 (8th Cir. 2008) ("However, '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'") (alteration in original) (quoting Elrod v. Burns, 427 U.S. 347,

373 (1976) (plurality)). Accordingly, we focus our discussion on CEF's likelihood of success on the merits of its First Amendment claim.

### A.     Viewpoint Discrimination

CEF argues the district engaged in unconstitutional viewpoint discrimination when it removed CEF from the after-school program because of its religious viewpoint while permitting similar secular youth development programs, such as the Boy and Girl Scouts, to remain. When the government targets a particular viewpoint taken by speakers on a general subject, the First Amendment is violated. R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 391 (1992). The government may not regulate speech when the specific ideology, opinion or perspective of the speaker is the rationale for the restriction.[1] Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46 (1983).

We agree with CEF's assertion that the district has engaged in viewpoint discrimination by ousting CEF from the after-school program. The district nearly concedes the issue, as its briefing and oral argument are replete with references to the fact that the primary difference between CEF and other groups participating in the after-school program, all of which provide the enrichment programming described in

---

[1]While it seems rather uncontroversial that the school has created what the Supreme Court has dubbed a "limited public forum" in this case, see Milford, 533 U.S. at 106; see also Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist., 640 F.3d 329, 334 (8th Cir.), cert. denied, 132 S. Ct. 592 (2011), because the district's exclusion of CEF from the after-school program is viewpoint-based, there is no need to analyze the nature of the forum of the after-school program, or the level of scrutiny given to the restrictions in the various fora. Even in a nonpublic forum, restrictions must be viewpoint neutral. Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 806 (1985) ("Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.").

Minnesota Statute § 124D.19(12), is that "prayer and proselytizing" take place during CEF's meetings. In other words, CEF provides its enrichment programming from a religious perspective, while the groups who have been allowed to remain in the program do not. Excluding CEF on this basis is prohibited viewpoint discrimination. Milford, 533 U.S. at 111; Rosenberger v. Rector and Visitors of Univ. of Virginia, 515 U.S. 819, 829-30 (1995); Ladue, 28 F.3d at 1507.

Similar to the instant case, Milford involved a GNC that met on school property after school along with several other character-building after-school programs. The Milford School District had argued that due to the excessively religious (thereby possibly implicating the Establishment Clause) nature of the GNC activities, excluding the club from district premises did not fall within viewpoint discrimination. The Court disagreed, holding that "[w]hat matters for purposes of the Free Speech Clause is that we can see no logical difference in kind between the invocation of Christianity by the Club and the invocation of teamwork, loyalty, or patriotism by other associations to provide a foundation for their lessons." Milford, 533 U.S. at 111.

Milford was a reaffirmation of the Supreme Court's earlier precedents in Lamb's Chapel v. Center Moriches Union Free School District, 508 U.S. 384 (1983), and Rosenberger, 515 U.S. 819, in which it similarly rejected schools' attempts to justify differential treatment of Christian and substantially similar secular groups. Lamb's Chapel, 508 U.S. at 393-95; Rosenberger, 515 U.S. at 831. In Lamb's Chapel, the school district determined that social, civic or recreational groups could meet in its after-school forum, but prohibited use "by any group for religious purposes." 508 U.S. at 387. The school district accordingly denied access to a church that wanted to present films teaching family values from a Christian perspective. The Court held that the films dealt with "family values," a subject "otherwise permissible" under the district's rules, so the exclusion of the church was unconstitutional viewpoint discrimination. Id. at 393-94.

In Rosenberger, a student organization at the University of Virginia was denied funding for printing expenses because its publication offered a Christian student viewpoint. 515 U.S. at 826. Other secular student organizations were funded by the university. The Court held that the denial of funding was unconstitutional because the university "select[ed] for disfavored treatment those student journalistic efforts with religious editorial viewpoints." Id. at 831. Importantly, the Court found that impermissible viewpoint discrimination arises not merely from exclusion but also from differential *disfavored* treatment. Id.

The district court below found that the district's removal of CEF from the after-school program was not viewpoint discrimination, partly because CEF was merely accorded less favorable treatment than other groups, as opposed to being denied access outright. And, the district court concluded that CEF could not prove irreparable harm because it continues to enjoy the status of a community partner. However, Rosenberger confirms that subjecting a religious organization to disfavored treatment because of its religious viewpoint on an otherwise includible subject matter is impermissible viewpoint discrimination, as is excluding the organization from a speech forum altogether. Id.; see also Ladue, 28 F.3d at 1507.

Moreover, Ladue is particularly hard to square with the district court's decision. In Ladue we held that the school district's exclusion, pursuant to a written use-of-premises policy, of a GNC from the 3:00 to 6:00 p.m. after-school program was impermissible viewpoint discrimination because the program remained open to the Boy Scouts and Girl Scouts. 28 F.3d at 1507. The GNC was allowed to use the premises after 6:00 p.m. on weekdays and after 8 a.m. on the weekends, but due to the later time slot, the GNC group's attendees could not take advantage of the late school bus to return home. Id. at 1503. This particular fact makes Ladue compelling precedent. Indeed, in Ladue, the school district did not bar the GNC from meeting at the school altogether, it simply gave the GNC a disfavored position, making it much

harder for the GNC to attract the after-school crowd, especially in relation to similar secular groups such as the Boy and Girl Scouts.

The district court in the instant case distinguished Ladue and Milford by noting that in Milford, the Supreme Court found that the GNC meetings were not sponsored by the school, and that the remedy sought in Milford was access to the premises, whereas here, the district does allegedly sponsor the GNC meetings and CEF has access to the premises, just not the resources of the after-school program. The district court similarly distinguished Ladue by pointing out that the GNC in Ladue was completely excluded from the premises (during the prime time slot) whereas CEF is allowed on the premises at the same time as the other after-school groups, it is just excluded from after-school program resources such as the snack and busing programs. We find that any differences between Ladue and Milford and the instant case to be without substantive distinction. Indeed, this is a relatively uncontroversial case of viewpoint discrimination, and the only remaining question is whether the district was justified in its chosen course of action.

### B.   Compelling Governmental Interest

The district court also found that the district had a compelling interest in excluding CEF from the after-school program resources in order to avoid an Establishment Clause violation. This finding was driven by the district court's conclusion that CEF's programming was district or school "sponsored" because it was part of an after-school program that was accorded funding resources available to all such programs. The compelling interest in avoiding an Establishment Clause violation, according to the district, justifies any possible viewpoint discrimination. We disagree.

An abridgement of First Amendment speech rights must be justified by a compelling governmental interest, and the government's interest in avoiding an

Establishment Clause[2] violation "'may be'" such an interest. Lamb's Chapel, 508 U.S. at 394 (quoting Widmar v. Vincent, 454 U.S. 263, 271 (1981)). However, the Supreme Court has made it clear that the Establishment Clause does not proscribe "private religious conduct during nonschool hours merely because it takes place on school premises." Milford, 533 U.S. at 115. Instead, the Establishment Clause requires neutrality, as opposed to hostility, towards religion. Rosenberger, 515 U.S. at 839. And as the Supreme Court has stated and restated, "neutrality is respected, not offended, when the government, following neutral criteria and evenhanded policies, extends benefits to recipients whose ideologies and viewpoints, including religious ones, are broad and diverse." Id.; see also Milford, 533 U.S. at 114 (quoting the same passage from Rosenberger).

In balancing the various First Amendment clauses it is important to remember that the Establishment Clause forbids "government speech" which endorses religion, while the Free Speech and Free Exercise Clauses protect private speech endorsing religion. Roark v. S. Iron R-1 Sch. Dist., 573 F.3d 556, 561 (8th Cir. 2009). Accordingly, whether the content of CEF's GNC meetings was private speech or school-sponsored speech is the key to analyzing the district's Establishment Clause defense to its practice of viewpoint discrimination.

We find erroneous the district court's conclusion that the GNC's message was school or district sponsored when it was part of the after-school program. First, the district policy on after-school programs states that participants are "non-school" and non-district-sponsored organizations. The fact that participants in the after-school program are given financial resources does not counsel us to look in the opposite direction. In Rosenberger, the Court held that the speech at issue was not government

_____

[2]Because CEF is challenging a specific government action (expulsion from the after-school club), rather than the specific policies of the district or the state statute, the Lemon v. Kurtzman, 403 U.S. 602 (1971) test is not implicated. Roark v. S. Iron R-1 Sch. Dist., 573 F.3d 556, 563 n.4 (8th Cir. 2009).

(or school-sponsored) speech because the school provided resources and funding to a diverse group of student organizations, each of which had provided a disclaimer stating that its group was independent from the university. 515 U.S. at 823, 834-35. Given these disclaimers and the existence of multiple student groups receiving funding, the Court pointed out that the university had not fostered any impression that the student groups spoke for the university, and instead the "University ha[d] taken pains to disassociate itself from the private speech involved." Id. at 841. Likewise, the district has chosen to provide funding for a variety of participants in the after-school program, including CEF until its ouster in 2009, and has taken pains to disassociate itself from the private speech of the groups involved.

Further, the factual similarities between this case and Milford and Ladue support the conclusion that CEF's GNC is not school sponsored, even when given the after-school program resources. Like the GNCs in Milford and Ladue, the meetings are held immediately after school at Jenny Lind Elementary, are open to any student who obtains parental permission to attend, and the forum is available to other secular community groups to foster character building activities. Other GNC cases lend further support to the notion that CEF's activities were not school sponsored. In Wigg v. Sioux Falls Sch. Dist. 49-5, 382 F.3d 807, 815 (8th Cir. 2004), we held that the district could not prohibit one of its *own teachers* from leading an after school GNC on the property of the school where she taught. Because the teacher's participation did not occur during a "school-sponsored event" such as graduation[3] or a sporting event involving the school; because she did not affiliate her views with the school district; and because students needed parental permission in order to attend while non-participating students exited the building before the GNC began, we held that the teacher was participating in private, not school-sponsored speech. Id.

---

[3]However, we have held that a parent/school board member's prayer at his daughter's graduation ceremony was not school sponsored because he was acting as a private citizen and not in his official school-board capacity. Doe v. Sch. Dist. of the City of Norfolk, 340 F.3d 605, 613 (8th Cir. 2003).

-10-

The record reflects that the organization, structure and activities of the various GNCs around the country have not changed since the programs were litigated in Milford nearly fifteen years ago. The Supreme Court and our court have both consistently held that this type of speech is private speech, not school sponsored. See Milford, 533 U.S. at 113; Wigg, 382 F.3d at 815; Ladue, 28 F.3d at 1509-10. Our sister circuits have ruled similarly. E.g., Child Evangelism Fellowship of New Jersey, Inc. v. Stafford Twp. Sch. Dist., 386 F.3d 514, 525 (3d Cir. 2004) (holding that the purpose of the school's forum was not to convey its own message but to assist all organizations in the community). Following this precedent, we hold that CEF's meetings, even as part of the after-school program, are not school sponsored.

All of the foregoing makes this case factually distinct from cases cited by the district regarding school involvement in prayer at public events, Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290 (2000); Lee v. Weisman, 505 U.S. 577 (1992), as well as the student newspaper restrictions found constitutionally permissible in Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260 (1988). Given that the content of the GNC meetings was not government speech, the school had no compelling interest in avoiding an Establishment Clause violation, and there is no other basis upon which it can justify its viewpoint discrimination.

## III. CONCLUSION

The district court abused its discretion in denying the preliminary injunction. CEF has a high likelihood of success on the merits of its First Amendment[4] claim. The likely First Amendment violation further means that the public interest and the balance of harms (including irreparable harm to CEF) favor granting the injunction.

---

[4]Because we find CEF has established a likelihood of success on its First Amendment claim, we need not consider its Equal Protection claim.

-11-

See Elrod, 427 U.S. at 373-74.  We therefore reverse and remand to the district court for further proceedings consistent with this opinion.

_____