# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-2708
_____

Russell Hotchkiss

*Plaintiff - Appellant*

v.

Cedar Rapids Community School District, et al.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: February 14, 2024
Filed: September 6, 2024
_____

Before LOKEN, COLLOTON,[*] and KELLY, Circuit Judges.
_____

LOKEN, Circuit Judge.

In this First Amendment retaliation case, plaintiff Russell Hotchkiss appeals the denial of his motion for a preliminary injunction barring defendants from enforcing a no-trespass notice issued by the Cedar Rapids Community School District

_____

[*]Judge Colloton became chief judge of the Circuit on March 11, 2024. See 28 U.S.C. § 45(a)(1).

("the District") "during the pendency of this litigation." Agreeing with the district court[1] that Hotchkiss "will not suffer irreparable harm absent this preliminary injunction," we affirm.

## I. Background

In September 2021, Hotchkiss, a resident of Linn County, Iowa with a young child enrolled in a District school, began sending emails to District officials regarding the District's COVID-19 masking and vaccination policies. On November 8, 2021, Hotchkiss sent an email titled "Meeting" to members of the District's Board of Education, then-Superintendent Noreen Bush, and the District's human resources department, with copies to many others including Iowa legislators and media figures. The email "officially and formally warned" that the District's masking requirements were unlawful, criticized the mask and vaccination policy, and stated that individual Board members "may have criminal charges brought against" them. Specifically addressing "Miss Psychology," defendant Jennifer Borcherding, a Board member with a degree in psychology, the email stated, "I will make sure that you are incarcerated." On November 14, Hotchkiss sent another email to Board members and dozens of others disparaging the District's masking and vaccination policies.

On November 15, the District held a video-recorded Board meeting. Hotchkiss attended and spoke during the public comment period, voicing his opposition to the District's policies. Referring to defendant Borcherding, he stated, "Miss Psychology down there doesn't seem to want to tell you people what's going on with our kids." Borcherding filed an affidavit stating that in the fall and winter of 2021, Hotchkiss sent her several "threatening" emails that made her feel "frightened." Because of her

---

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

fear of Hotchkiss, she avoided attending a professional conference in November 2021 because she did not want to leave her children home without her.

On December 13, the District held another video-recorded Board meeting. Hotchkiss again spoke during the public comment period, this time for thirty minutes because others yielded their allotted times to him. Hotchkiss again objected to the masking and vaccination policies, at times raising his voice and speaking in an aggressive tone. He addressed remarks to specific Board members, again referring to Borcherding as "Miss Psychology," and asserted that Board members would be subject to criminal and civil liability. He called on several members of the Board to resign and concluded by saying, "take that vote [on the mask policy] tonight, Mr. President. If you don't, we're comin." Other attendees criticized the mask and vaccination policy. At the end of the public comment period, Hotchkiss is heard on the video recording yelling, "take a vote," and other attendees are heard chanting the same phrase. Several Board members aver that Hotchkiss tried to approach the Board during the meeting to demand a vote, which Hotchkiss denies, and Superintendent Bush approached him to de-escalate the situation. Hotchkiss submitted a local news photograph showing Hotchkiss and Bush speaking, with a police officer standing beside them.[2]

On December 22, Hotchkiss sent a certified letter to each Board member's home and office. The letter attached a copy of his speech at the December 13 meeting and stated, "since you have not taken the vote strenuously requested upon you to unmask our children and faculty and since you continue the assault on them on a daily basis, we will be moving forward with criminal proceedings, impeachment, and constitutional violations" you committed. "I strenuously urge you to reread your oath of office, you have egregiously violated it and it is time for you to acknowledge it and

_____

[2]Noreen Bush died of cancer in 2022. The defendants named in Hotchkiss's May 2023 Complaint include Russ Bush as successor in interest to Noreen Bush.

receive just punishment." When the District learned of this letter on January 3, 2022, it determined that a no-trespass order would be issued.

On January 10, a Cedar Rapids police officer personally served a letter signed by Superintendent Bush stating that it provided Hotchkiss "a notice of no trespass which immediately excludes you from appearing on any Cedar Rapids Community School District premises effective January 10 . . . includ[ing] any [CRCSD] property or facilities or any property owned or controlled by the District, for any reason from this date forward and until further notice. Failure to follow this notice will result in your immediate removal and may include assistance from law enforcement."

The notice explained it was "a result of your actions during the November 15, 2021 and December 13, 2021 Board of Education Meetings . . . which included disruptive and threatening behavior towards CRCSD school board members and staff." These actions "interfere with our goal to maintain a safe, secure, and orderly District environment and violate District Policy 1007 'Conduct on School District Premises' and Regulation 1002.2 'Visitors to District' and Iowa Code Chapter 723 and § 716.7(2)(a)." (See the Appendix to this opinion.) The notice advised that Hotchkiss could communicate in writing with School Board members and directly with the principal of Hiawatha Elementary School. "Verbal threats and demeaning behavior will not be tolerated."

Hotchkiss read the notice and asked if he was permitted to drop off and pick up his child from school. He was told he could. Less than two weeks later, Hotchkiss sent each District Director a fee schedule demanding payments ranging from $10,000 for each child forced to wear a mask, to $500,000,000 for each child vaccinated on school grounds, to $1 trillion for any retaliation against his child. Some time later, Hotchkiss enrolled his child in a neighboring school district. The last communication from Hotchkiss to the Board in the record is dated January 18, 2022. He has not attended any of the thirty-eight Board meetings held since the notice issued.

-4-

Hotchkiss filed this suit on May 17, 2023, some sixteen months after service of the no-trespass notice, asserting a First Amendment retaliation claim under 42 U.S.C. § 1983 and a claim under the Iowa Open Meetings Act, Iowa Code § 21.1. On June 8, Hotchkiss moved for a preliminary injunction against enforcement of the no-trespass order pending completion of the lawsuit. After a hearing on June 30, the district court issued a Memorandum Opinion and Order denying a preliminary injunction. Hotchkiss appeals.

## II. Discussion

We have jurisdiction to review an interlocutory order denying a preliminary injunction. 28 U.S.C. § 1292(a)(1). "We review a district court's denial of a preliminary injunction for an abuse of discretion," reviewing the court's fact findings for clear error. Powell v. Noble, 798 F.3d 690, 697 (8th Cir. 2015). Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, 555 U.S. 7, 22 (2008) (citation omitted). This is a heavy burden "where, as here, granting the preliminary injunction will give [Hotchkiss] substantially the relief [he] would obtain after a trial on the merits." United Ind. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998) (quotation omitted).

District courts consider four factors in determining whether to grant a preliminary injunction: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981). Here, the district court made findings of fact that will not be binding at a trial on the merits, see University of Texas v. Camenisch, 451 U.S. 390, 395 (1981), and concluded that all four Dataphase factors weigh against grant of the requested preliminary injunction.

The district court properly began its analysis with the irreparable harm factor because "[t]he failure of a movant to show irreparable harm is an 'independently sufficient basis upon which to deny a preliminary injunction.'" Sessler v. City of Davenport, 990 F.3d 1150, 1156 (8th Cir. 2021) (quotation omitted). "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Grasso Ents., LLC v. Express Scripts, Inc., 809 F.3d 1033, 1039 (8th Cir. 2016), quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959). The party seeking a preliminary injunction must show "that irreparable injury is *likely* in the absence of an injunction," not merely "a possibility of irreparable harm." Winter, 555 U.S. at 22 (emphasis in original; citation omitted). He must show a likelihood of irreparable harm in the future. Sessler, 990 F.3d at 1156; see Buckingham Corp. v. Karp, 762 F.2d 257, 262-63 (2d Cir. 1985) (past injury alone insufficient).

The district court concluded that Hotchkiss had failed to make a showing that irreparable harm was likely in the absence of a preliminary injunction:

> [T]he record does not indicate plaintiff's attempt or intent to return to the District premises during the pendency of the litigation. Plaintiff's child is no longer attending school in the Cedar Rapids School District. Plaintiff sued the District over a year and a half after receiving the no-trespass notice. Thirty eight school board meetings have passed. The record does not indicate plaintiff even communicating with defendants after the no-trespass notice. . . . Thus, although the no trespass notice could impair plaintiff's First Amendment interests, he has failed to show any effort in the last 16 months to exercise his First Amendment rights and his asserted desire to do so in November [2023] is not supported by the record and is speculative, at best, given he does not have a child in the district. Thus, the Court finds plaintiff has failed to show irreparable harm.

On appeal, as in the district court, Hotchkiss relies primarily on a statement in the plurality opinion in Elrod v. Burns: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. 347, 373-74 (1976). Therefore, he argues, if he establishes a likelihood of success on the merits, the requested preliminary injunction must be granted. We disagree. Elrod was a 5 to 3 decision declaring certain patronage employment practices violated the First Amendment. One Justice did not participate. Two Justices in the majority declined to join the plurality's "wide-ranging opinion." Id. at 375 (Stewart, J., concurring in the judgment). Three Justices would not have held a "long-prevailing practice" unconstitutional. Id. at 388 (Powell, J., dissenting). Moreover, Hotchkiss ignores the preceding sentence in the plurality opinion: "It is clear therefore that First Amendment interests were either threatened or in fact being impaired *at the time relief was sought*." Id. at 373 (emphasis added). Hotchkiss's interpretation of this sentence in Elrod is simply not the law:

> As a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits. Rather, a court must also consider whether the movant has shown "that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

Benisek v. Lamone, 138 S. Ct. 1942, 1943-44 (2018), quoting Winter, 555 U.S. at 20.

We agree with the district court that Hotchkiss failed to make a clear showing "that irreparable injury is likely in the absence of an injunction." This lawsuit was filed sixteen months after Hotchkiss was served with the no-trespass notice. "[A] party requesting a preliminary injunction must generally show reasonable diligence." Benisek, 138 S. Ct. at 1944; see Ng v. Bd.of Regents of Univ. of Minn., 64 F.4th 992, 997 (8th Cir. 2023) (unreasonable delay "is a sufficient basis to deny" a preliminary injunction). Hotchkiss had moved his child to another school district, missed thirty-

eight Board meetings, and failed to express his views in writing, as the notice permitted. On June 8, 2023, three weeks before the preliminary injunction hearing, Hotchkiss filed a Declaration that "I would like to attend meetings of the Cedar Rapids Community School District school board. I will comply with the district's reasonable rules for decorum at those meetings." We agree with the district court that this last-minute Declaration is unsupported and speculative. "Speculative harm does not support a preliminary injunction." S.J.W. ex rel. Wilson v. Lee's Summit Sch. Dist., 696 F.3d 771, 779 (8th Cir. 2012) (citation omitted).

For these reasons, we conclude the district court did not abuse its discretion when it denied Hotchkiss's motion for a preliminary injunction because he failed to make an adequate showing of irreparable harm. As in Sessler, 990 F.3d at 1157:

> [Hotchkiss] has asked the district court to determine whether enforcement of the [District's no trespass notice] violated his constitutional rights . . . . Such a determination will eventually be made. However, [Hotchkiss] has not demonstrated preliminary injunctive relief is warranted in this case.

Because "failure of a movant to show irreparable harm is an independently sufficient basis upon which to deny a preliminary injunction," this conclusion ends our analysis. Id. at 1156 (quotation omitted); see Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 78 F.4th 1011 (8th Cir. 2023). The district court's Memorandum Opinion and Order dated July 21, 2023 is affirmed.

APPENDIX

District Policy 1007, "Conduct on School District Premises," provides:

> Individuals are permitted to be present on school district premises only as guests of the District, and, as a condition of such permission, they must comply with the District's policies, regulations, and procedures.

Individuals will not be allowed to interfere with or disrupt the educational environment, the educational program or District activities. . . . Abusive, threatening, or inappropriate, verbal or physical conduct of individuals directed at students, school officials, employees, officials, activity sponsors or other individuals will not be tolerated.

Regulation 1002.2, "Visitors to District," provides:

Visitors will conduct themselves with respect and consideration for the rights of others while visiting District facilities and/or attending District/school events. . . . Visitors failing to conduct themselves accordingly may be removed from school district premises by the school official, employee or individual in charge. . . . The superintendent/designee may exclude an individual who violates this regulation from being present on school district premises in the future and/or attending future school district sponsored or approved activities.

Iowa Code Chapter 723 lists several crimes under the category of "Public Disorder." Section 716.7(2)(a) defines trespass.

_____